**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICHARD CROSBY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-CV-1535 |
| | ) | |
| v. | ) | |
| | ) | |
| LANDSTAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LANDSTAR'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS FOR LACK OF JURISDICTION**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP
James E. Drnec (# 3789)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6805
jdrnec@morrisjames.com
Attorneys for Defendant
Landstar/Inway

Date: May 12, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

NATURE AND STAGE OF THE PROCEEDINGS ..... 1

STATEMENT OF RELEVANT FACTS ..... 2

ARGUMENT ..... 3

1. The Contract Between the Parties Provides the Exclusive Forum for Resolution of Disputes Arising Under That Agreement ..... 3

2. Plaintiff is Attempting to Cure his Failure to Comply With the Agreement's Forum Selection Clause by Forum Shopping Because his Claims are Time-Barred by the Agreement ..... 4

CONCLUSION ..... 6

## TABLE OF AUTHORITIES

**Cases** **Page**

*Elf Atochem North America, Inc. v. Jaffari*
1998 WL 326596 (Del.Ch.) aff'd 727 A.2d 286 (Del. 1999) ..........................................3

## NATURE AND STAGE OF THE PROCEEDINGS

On December 20, 2004, plaintiff Richard Crosby ("Plaintiff") initiated the above-captioned action by filing his Complaint (D.I.# 1). Plaintiff's Complaint filed two years after the incident at issue prays for the following relief: "from theft, theft by deception, & damages related to the accident occurring on December 20, 2002 including medical & legal costs in the amount of $40,042,000.00". (*Id.*) No further allegation is made. No recitation of the facts giving rise to any of these claims is provided. (*Id.*)

On December 28, 2004, Plaintiff filed his Amended Complaint. (D.I.# 2) The amendment failed to add any basis for jurisdiction, and provided no more in the way of a factual basis for his claims.

On January 24, 2005, Landstar filed its Motion to Dismiss or, in the Alternative, to Transfer Venue. (D.I.# 4) Among the grounds asserted for dismissal was Plaintiff's failure to adequately support his burden of establishing jurisdiction. (*Id.*) On April 8, 2005, the Court granted in part and denied in part Landstar's Motion to Dismiss, (D.I.# 7) ordering Plaintiff to supplement the factual record by May 9, 2005. (*Id.*)

On May 9, 2005 Plaintiff filed his response to the Court's April 8, 2005 Order. (D.I.#8) (also attached hereto as Exhibit "A").

This is Landstar's Brief in Support of Motion to Dismiss for Lack of Jurisdiction.

## STATEMENT OF RELEVANT FACTS

On July 1, 2001, Richard Crosby entered into a Motor Vehicle and Haulage Agreement (the "Agreement") with Landstar[1] (attached hereto as Exhibit "B"). Paragraph 25 of that Agreement provides, in relevant part:

> This Agreement is to be governed by the laws of the State of Illinois. Any dispute arising our of or relating to this Agreement, including any allegation of breach thereof, will be fully and finally resolved by arbitration in accordance with Illinois's arbitration act, and the arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). A Demand for Arbitration shall be filed with the AAA's office located in or closest to Rockford, Illinois and shall be filed not later than one year after the dispute arises or the claim accrues. Failure to file the Demand within the one year period will be deemed a full waiver of the claim. The place of arbitration hearing shall be Rockford, Illinois. . . .

(*See* Exhibit B).

Mr. Crosby alleges that Landstar failed to pay to him monies due him, and that a trailer that was leased to him was defective, causing personal injury and property damage. Exhibit A. It is believed that the incident precipitating this legal action occurred on December 20, 2002. Plaintiffs' Complaint was filed December 20, 2004. (D.I. # 1).

---

[1]  The only available copy of the Agreement signed by the parties is attached as Exhibit B. It is, however, nearly illegible. A blank copy of that same agreement is included with Exhibit B so that the Court can more easily read the language of the arbitration provision, which appears in that agreement at paragraph 25.

## ARGUMENT

This Court does not have jurisdiction over the subject matter of this suit. Plaintiff and Landstar entered into a valid, binding contract which includes a valid forum selection clause which applies to disputes arising under the Agreement: arbitration in Rockford, Illinois pursuant to the rules of the American Arbitration Association. The Agreement further provides that demand for such arbitration must be filed within one year of the incident giving rise to the dispute, or all claims are waived. There is no record of such a demand by Mr. Crosby. For all these reasons, his Complaint and Amended Complaint fail and must be dismissed.

### 1. The Contract Between the Parties Provides the Exclusive Forum for Resolution of Disputes Arising Under That Agreement.

Plaintiff bears the burden of establishing jurisdiction. Where a plaintiff's claims arise under a written agreement containing a valid forum selection clause, those claims must be resolved consistent with that clause, and in the manner and place agreed to by the parties. (*See Elf Atochem North America, Inc. v. Jaffari*, 1998 WL 326596 (Del.Ch.) *aff'd* 727 A.2d 286 (Del. 1999)).

On June 24, 2001 the Plaintiff and Defendant Landstar entered into a Motor Vehicle and Haulage Agreement between Independent Contactor and Landstar, Inway, Inc. ("Agreement") (Exhibit B). Paragraph 25 of said Agreement – "Governing Law and Arbitration"- provides that the Agreement is governed by the law of the State of Illinois and that all disputes shall be fully and finally resolved by arbitration in accordance with Illinois's Arbitration Act. (*See* Exhibit B).

Plaintiff brings suit here claiming that Landstar has breached the Agreement by failing to pay him monies owed for services provided, and for leasing to him defective

equipment. (*See* Exhibit A). These claims arise under the Agreement, which defines the parties' relationship, obligations and rights. (*See* Exhibit B, ¶ 4 "Compensation"; ¶ 1 "Equipment", ¶15 "Loss or Damage Claims"). Plaintiff's sole recourse under the Agreement was to make a demand for arbitration within one year of the date his claim arose. He cannot establish jurisdiction over this matter in this Court; accordingly, the complaint should be dismissed with prejudice.

**2. Plaintiff is Attempting to Cure his Failure to Comply With the Agreement's Forum Selection Clause by Forum Shopping Because his Claims are Time-Barred by the Agreement.**

Although it does not bear directly on the issue before this court, i.e., whether jurisdiction over this dispute lies here, the facts regarding the timeliness of Plaintiff's claims are informative. The Agreement provides: "A demand for Arbitration shall be filed with the American Association ("AAA") office located in or closest to Rockford, Illinois and shall be filed not later than one year after the dispute arises or the claim accrues. Failure to file the Demand within the one year period will be deemed a full waiver of the claim. The place of the arbitration hearing shall be Rockford, Illinois." (*See* Exhibit B, ¶ 25).

The accident in which Plaintiff claims his leased trailer failed occurred on December 20, 2002. Plaintiff also claims that Landstar owes him money for "several loads that [he] had pulled for Landstar before the accident that [he] was not paid for." (*See* Exhibit A). He does not claim any damages for any alleged act or omission occurring after the date of the accident. (*Id.*) Accordingly, all of his claims arose on or before December 20, 2002. As such, the last date on which he could file a demand for arbitration consistent with the Agreement was December 20, 2003. Landstar has no

record of Plaintiff making a Demand of Arbitration.  The instant action was filed on or about December 20, 2004. (D.I. #1)    Accordingly, it is apparent that Plaintiff is attempting to cure his failure to comply with the Agreement by filing this action.  This action should be dismissed for lack of jurisdiction.

## CONCLUSION

Landstar respectfully requests this Court dismiss with prejudice Plaintiff's Amended Complaint for lack of jurisdiction.

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

James E. Drnec (# 3789)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6950
jdrnec@morrisjames.com
Attorneys for Defendant
Landstar/Inway

Date: May 12, 2005

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD CROSBY,
PLAINTIFF

V.

LANDSTAR, ET. AL.,
DEFENDANTS

CA. NO. 04-CV-1535 SLR

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2005 MAY -9 AM 11:53

PLAINTIFF RICHARD CROSBY RESPONDING TO JUDGES ORDER OF APRIL 8th 2005 REQUESTING SUPPLEMENT TO THE RECORD. ALSO, PLAINTIFF RICHARD CROSBY MOTION TO SET FOR TRIAL OR TO SET FOR PRE-TRIAL HEARING IF NEEDED.

1) FACTS & CIRCUMSTANCES SURROUNDING ACCIDENT. PLAINTIFF HAD
BOTH PERSONAL INJURY & PROPERTY DAMAGE THROUGH DEFENDANT LANDSTAR
AT THE TIME OF ACCIDENT. COVERAGE & PAYMENT SHOULD NOT
DEPEND ON FAULT. I RICHARD CROSBY WAS DRIVING A SEMI-TRUCK
OWNED BY MYSELF - PULLING A LOADED TRAILOR RENTED FROM
LANDSTAR. WHILE IN THE PROCESS OF SLOWING DOWN IN
TRAFFIC THE TRAILOR OWNED AND MAINTAIN BY LANDSTAR FAILED.
SPECIFIC FAILURE WAS THE TIE DOWN "D-RINGS" THAT SHATTERED
UNDER STRESS RELEASEING THE LOAD TO FLY FORWARD CAUSEING
PLAINTIFF HARM AND DESTROYING THE SEMI-TRUCK. PLAINTIFF
WAS AVAILABE TO LANDSTAR'S INDEPENDANT INVESTIGATOR & RECEIVED
NO TICKET. BOTH POLICE & THE INVESTIGATOR HAVE STATED THE ENTIRE
ACCIDENT WAS CAUSED BY THE TRAILOR'S FAILURE. PAYMENT OF
INSURANCE CLAIMS SHOULD NOT HINGE OF DEFENDANTS POSITION
THE PLAINTIFF WAS SOMEHOW AT FAULT.

2) MY RELATIONSHIP TO THE ACCIDENT IS THAT I WAS THE
DRIVER AND OWNER OF THE SEMI-TRUCK WHICH WAS DESTROYED
~~AND WAS INJURED PRIMARILY TO THE ARMS, FACE, AND PLEVIC~~

3) FACTS RELATED TO WORK PERFORMED AND NOT PAID: THERE WERE SEVERAL LOADS THAT I HAD PULLED FOR LANDSTAR BEFORE THE ACCIDENT THAT I WAS NOT PAID FOR. ALSO, THE LOAD I WAS UNDER AT THE TIME HAD MONIES DUE.

4) THE SPECIFIC HARM DONE TO ME IS AT A MINIMUM PHYSICAL DAMAGES PRIMARILY TO BOTH ARMS, FACE, AND PELVIC AREA. ALSO, BY DEFENDANT FAILURE TO PAY CLAIMS BOTH MEDICAL & DAMAGES TO EQUIPEMENT CAUSEING FURTHER DAMAGES BY DRAINING PLAINTIFF OF FUNDS. PLAINTIFF HAS BEEN UNABLE TO AFFORD PROPER MEDICAL ATTENTION WITHOUT CLAIMS BEING PAID IN A TIMELY MANNER.

I THE PLAINTIFF AM STILL FILING PRO-SE AND IN THE PROCESS OF SELLING OFF A FEW REMAINING ASSETS TO BE ABLE TO HIRE PROPER LEGAL HELP. I SHOULD HAVE A LAWYER BEFORE ANY HEARING OR TRAIL AND WOULD REQUE THAT THE JUDGE GRANT MY MOTION TO TRIAL OR AT LEAST TO SET A PRE-HEARING.

RICHARD CROSBY

[signature]

1502 S. DUPONT HIGHWAY
NEW CASTLE, DE 19720
PRO SE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD CROSBY
PLAINTIFF,

V.

LANDSTAR, ET. AL.
DEFENDANTS

C.A. NO - CV-1535

CERTIFICATE OF SERVICE

I, RICHARD CROSBY, HEREBY CERTIFY THAT ON THE 9th DAY OF ~~[illegible]~~ MAY, 2005, I HAVE CAUSED TWO (2) COPIES OF

PLAINTIFF RICHARD CROSBY RESPONDING TO JUDGE ORDER OF APRIL 8th 2005 REQUESTIN SUPPLEMENT TO THE RECORD. ALSO, PLAINTIFF RICHARD CROSBY MOTION TO SET FOR TRIAL OR TO SET FOR PRE-TRIAL HEARING IF NEEDED.

TO BE SERVED IN THE MANNER INDICATED UPON THE FOLLOWING COUNSEL OF RECORD:

VIA FIRST CLASS MAIL

JANE E. ORNEC
222 DELAWARE AVENUE
P.O. BOX 2306
WILMINGTON, DE 19899
(302) 888-6950

RICHARD CROSBY

[signature]

MAY 9th 2005

# EXHIBIT B

LANDSTAR INWAY

IMPORTANT: CARBONLESS PAPER

Landstar Inway, Inc.
P.O. Box 7013
Rockford, IL 61125

TRACTOR NUMBER: ______________ TRAILER NUMBER: ______________ DATE: ______________

(TO BE ENTERED BY CARRIER'S AUTHORIZED AGENT OR EMPLOYEE UPON APPROVAL BY THE GENERAL OFFICE)

**MOTOR VEHICLE AND HAULAGE AGREEMENT**
**BETWEEN INDEPENDENT CONTRACTOR AND LANDSTAR INWAY, INC.**
**("Agreement")**

1. EQUIPMENT: INDEPENDENT CONTRACTOR represents and warrants to CARRIER that it holds full legal title to or is otherwise authorized to contract the equipment identified in Section IV of the Statement of Lease and Receipt for Equipment (the "Equipment"), and further warrants and represents that the Equipment is in good, safe and efficient operating condition as required by government authorities and shall be so maintained at INDEPENDENT CONTRACTOR's expense throughout the duration of this Agreement. The choice of location and persons to perform any necessary repairs or maintenance is exclusively vested with INDEPENDENT CONTRACTOR. ALL POWER EQUIPMENT WHICH IS THE SUBJECT OF THIS AGREEMENT IS TO BE OPERATED BY FULLY QUALIFIED AND LICENSED OPERATORS TO BE PROVIDED BY INDEPENDENT CONTRACTOR AT ITS EXPENSE.

   (a) Receipt for Equipment. Upon INDEPENDENT CONTRACTOR making available to CARRIER the Equipment, CARRIER shall furnish to INDEPENDENT CONTRACTOR the Statement of Lease and Receipt for Equipment, which shall constitute the receipt required by 49 C.F.R. § 376.11(b). Upon termination of the Agreement, INDEPENDENT CONTRACTOR shall execute the same or similar Statement of Lease and Receipt for Equipment as the written receipt for the return of the Equipment by CARRIER to INDEPENDENT CONTRACTOR. In the event that INDEPENDENT CONTRACTOR fails to submit the Statement of Lease and Receipt for Equipment upon termination of this Agreement, INDEPENDENT CONTRACTOR authorizes CARRIER to enter the time and date in Section VI of the Statement of Lease and Receipt for Equipment to evidence the return of the Equipment to INDEPENDENT CONTRACTOR by CARRIER. If required by applicable federal, provincial or state law, INDEPENDENT CONTRACTOR shall name CARRIER on either the vehicle or plate portion of the vehicle permit, or include CARRIER on a statement of a lease between INDEPENDENT CONTRACTOR and a third party. However, under no circumstances shall CARRIER be, or be deemed to be, liable for any lease payments whatsoever due or owed from INDEPENDENT CONTRACTOR to any third party. In the event that CARRIER is found to be liable for such lease payments, INDEPENDENT CONTRACTOR shall fully indemnify CARRIER for any and all costs or damages imposed.

   (b) Operation of Equipment. INDEPENDENT CONTRACTOR agrees to operate the Equipment in a safe and prudent manner at all times in accordance with the laws of the various jurisdictions in which it is operated and pursuant to the operating authorities of the CARRIER, and in accordance with all rules relating to traffic safety, highway protection and road requirements.

   (c) Inspection and Maintenance of Equipment. INDEPENDENT CONTRACTOR agrees to maintain the Equipment, at its sole expense, in accordance with the safety and equipment standards specified in all applicable federal, provincial and state laws under which the Equipment is licensed to operate. INDEPENDENT CONTRACTOR shall, at its expense, make the Equipment available for inspection by CARRIER at a place designated by CARRIER. Thereafter, as required by applicable federal law, INDEPENDENT CONTRACTOR shall make the Equipment available for inspection by CARRIER at least once every 120 days. Providing that such inspection is done every 120 days and at a place designated by CARRIER, then CARRIER will pay for the expense of inspection. If the Equipment is not inspected every 120 days, the Equipment will be placed out-of-service by CARRIER until the required inspection is completed, in which case the inspection shall be at INDEPENDENT CONTRACTOR's sole expense. If any inspection reveals that the Equipment does not comply with applicable standards of federal, provincial or state law, the Equipment must be made to comply with such requirements by INDEPENDENT CONTRACTOR, at its expense, within a reasonable time as determined by CARRIER. INDEPENDENT CONTRACTOR shall, at its sole expense, keep records of inspection, repair, and maintenance of the Equipment in accordance with the Federal Motor Carrier Safety Regulations (49 C.F.R. Part 396) and, if operated in Canada, applicable provincial regulations, and shall maintain all such records for the duration of this Agreement and for six (6) months thereafter. INDEPENDENT CONTRACTOR shall, as directed by CARRIER, forward to CARRIER all maintenance records covering the Equipment required by applicable DOT or Canadian federal or provincial regulations.

   (d) Painting or Marking of Equipment. If required by applicable federal, provincial or state law, INDEPENDENT CONTRACTOR shall cause the name, style, mark or logo of CARRIER to be affixed to the Equipment on the direction and in the manner prescribed by CARRIER. INDEPENDENT CONTRACTOR shall be responsible for the cost of affixing such name, style, mark or logo and for the removal of same at the termination of this Agreement.

2. DURATION OF AGREEMENT: This Agreement shall be effective as of the date entered hereinbelow and shall remain in effect until terminated in accordance with the provisions of this Agreement. The breach by either party of any of the provisions of this Agreement shall immediately terminate all provisions of this Agreement, except those provisions relating to indemnification of CARRIER by INDEPENDENT CONTRACTOR as contained in this Agreement, which indemnification provisions shall be effective at all times. Either party, by giving the other party twenty-four (24) hours written notice, may terminate this Agreement at any time. CARRIER may also terminate the Agreement immediately by oral notice followed by written notice to INDEPENDENT CONTRACTOR. Acceptance of tender of load after the effective date of this Agreement shall indicate understanding and acceptance by INDEPENDENT CONTRACTOR of the terms and conditions of this Agreement. INDEPENDENT CONTRACTOR shall ensure that any worker employed or utilized by INDEPENDENT CONTRACTOR to provide services under this Agreement complies with the terms and conditions of this Agreement. Although this Agreement does not contain a stated date of termination, the parties agree that they are not creating a permanent or indefinite relationship.

3. EXCLUSIVE POSSESSION AND RESPONSIBILITY: The Equipment shall be for CARRIER's exclusive possession, control and use for the duration of this Agreement. This provision is set forth solely to conform with Federal Highway Administration regulations and shall not be used for any other purposes, including any attempt to classify INDEPENDENT CONTRACTOR or its workers as employees of CARRIER. Nothing in the provisions required by 49 C.F.R. § 376.12(c)(1) is intended as evidence that the INDEPENDENT CONTRACTOR or any worker provided by INDEPENDENT CONTRACTOR is an employee of CARRIER. During the term of this Agreement, CARRIER shall have the exclusive right to subcontract the Equipment to other authorized motor carriers. INDEPENDENT CONTRACTOR may only subcontract or trip lease the Equipment upon prior written authorization received from CARRIER as set forth in Paragraph 19. CARRIER has no right to and will not control the manner nor prescribe the method of doing that portion of the operation which is contracted for in this Agreement by INDEPENDENT CONTRACTOR, except such control as can reasonably be construed to be required by all applicable laws and regulations. INDEPENDENT CONTRACTOR reserves the right to accept or reject any freight tendered for transportation by CARRIER.

4. COMPENSATION: It is expressly understood and agreed that INDEPENDENT CONTRACTOR's compensation shall be as set forth in Appendix A and such compensation shall constitute the total compensation for everything furnished, provided, or done by INDEPENDENT CONTRACTOR in connection with this Agreement, including the services of its drivers. All mileage computations shall be based on CARRIER's mileage guide.

   (a) Settlements. CARRIER shall settle with INDEPENDENT CONTRACTOR with respect to services provided under this Agreement within fifteen (15) calendar days after INDEPENDENT CONTRACTOR's submission, in proper form, of those documents necessary for CARRIER to secure payment from CARRIER's customers, including the bill of lading, signed delivery receipt or other proof of delivery acceptable to CARRIER, and properly completed driver logs as required by applicable federal, provincial or state law, and, in the case of C.O.D. shipments, delivery of the certified check or money order due to CARRIER. CARRIER will provide INDEPENDENT CONTRACTOR, at or before the time of settlement, a copy of the applicable rated freight bill, bills of lading (in the case of Canadian originating shipments) any other applicable document from which rates or charges are computed, or a computer-generated document containing the same information. INDEPENDENT CONTRACTOR may view during CARRIER's normal business hours a copy of any such applicable freight bill or other document. CARRIER may, at its discretion, delete the names of shippers and consignees shown on any such underlying document to be inspected by INDEPENDENT CONTRACTOR. Upon termination of this Agreement, CARRIER will withhold the final settlement due to INDEPENDENT CONTRACTOR, if any, under this Agreement until INDEPENDENT CONTRACTOR returns to CARRIER the identification devices INDEPENDENT CONTRACTOR is required to return to CARRIER pursuant to Paragraph 6 of this Agreement. In the event that the identification devices have been lost or stolen, a letter certifying their removal will satisfy this requirement for purposes of issuing final settlement to INDEPENDENT CONTRACTOR.

   (b) Pre-Trip Settlement. Where INDEPENDENT CONTRACTOR has secured a pre-trip settlement of any kind from CARRIER, or if there shall be any other amounts due CARRIER from INDEPENDENT CONTRACTOR or its workers pursuant to this Agreement, including but not limited to, operational expenses set forth in Paragraph 7, cargo claims, property damage, towing charges, requested clothing items, vehicle repairs, tires, Equipment cleaning expenses, and deductions for any insurance related costs, CARRIER shall be authorized to deduct the amount of such pre-trip settlement or other amount due CARRIER from any settlement, escrow fund, or any monies due or becoming due to INDEPENDENT CONTRACTOR from CARRIER under this Agreement, and if such monies are insufficient to cover the total amount due CARRIER, then INDEPENDENT CONTRACTOR will on demand pay to CARRIER all sums remaining due to CARRIER, together with interest at the maximum legal rate and any expense, including reasonable attorney fees, incurred by CARRIER in recovering such amounts from INDEPENDENT CONTRACTOR. INDEPENDENT CONTRACTOR and its workers shall not charge any purchase to CARRIER and, in the event INDEPENDENT

CONTRACTOR or its workers do charge any purchase to CARRIER, such sums paid by CARRIER shall be treated as a Pre-Trip Settlement made to INDEPENDENT CONTRACTOR and shall be recoverable by CARRIER under this provision. INDEPENDENT CONTRACTOR authorizes CARRIER to make pre-trip settlements in compensation requested by INDEPENDENT CONTRACTOR or its workers directly to INDEPENDENT CONTRACTOR's workers, provided, however, that CARRIER has complete discretion as to whether to issue a pre-trip settlement and the amount of any pre-trip settlement. In no event shall CARRIER make a pre-trip settlement to INDEPENDENT CONTRACTOR of more than 30% of INDEPENDENT CONTRACTOR's adjusted gross revenue as set forth in Appendix A. CARRIER shall furnish INDEPENDENT CONTRACTOR a written explanation and itemization of all deductions and chargebacks made under this provision. All Comchek (or similar service) Pre-Trip Settlements requested by INDEPENDENT CONTRACTOR shall be subject to a fee of Three Dollars ($3.00) for each such settlement. Pre-Trip Settlements pre-loaded onto INDEPENDENT CONTRACTOR's fuel card shall be subject to a fee of One Dollar and Seventy-Five Cents ($1.75) for each such settlement. CARRIER will be deemed to have a lien against monies in its possession which are receivables to the INDEPENDENT CONTRACTOR to cover any monies advanced or paid by CARRIER for items which are INDEPENDENT CONTRACTOR's responsibility.

(c) Other Costs and Deductions/Multiple Contracts. INDEPENDENT CONTRACTOR, at the time of signing this Agreement or at any time thereafter, may authorize CARRIER to make additional deductions not set forth in this Agreement from settlements due INDEPENDENT CONTRACTOR. In such case, a copy of the signed authorization to make such additional deduction, specifying the amounts, terms, and conditions thereof, shall be attached to and made a part of this Agreement. CARRIER shall furnish INDEPENDENT CONTRACTOR with a written explanation and itemization of all deductions made from settlements due INDEPENDENT CONTRACTOR under this Agreement. If INDEPENDENT CONTRACTOR has more than one agreement with CARRIER, INDEPENDENT CONTRACTOR understands and acknowledges that CARRIER may make deductions from trip settlements due, and escrow funds held for, INDEPENDENT CONTRACTOR for any monies due CARRIER under the terms of any agreement.

(d) In addition to certain insurance coverages, INDEPENDENT CONTRACTOR is required to provide at its sole cost all Equipment, accessories or devices required for the operation of the Equipment. In the event INDEPENDENT CONTRACTOR elects to purchase, lease or finance such Equipment, accessories or devices from CARRIER or a commonly owned company, the terms of Appendix C of this Agreement shall apply.

5. **ESCROW:** INDEPENDENT CONTRACTOR and CARRIER shall establish an escrow fund. The total amount of such escrow fund shall be Five Hundred Dollars ($500) per unit, which amount will be deducted from INDEPENDENT CONTRACTOR'S compensation within a fifteen (15) week period. Such escrow fund shall be returned to INDEPENDENT CONTRACTOR only upon termination of this Agreement and the balance due shall be refunded not later than forty-five (45) days after such termination, provided the four (4) following listed conditions are complied with by INDEPENDENT CONTRACTOR:

(1) Return to CARRIER of all identification devices;

(2) Return of base plate and permits as required herein;

(3) Return of all signed delivery receipts for all shipments not previously forwarded to CARRIER; and

(4) Return of all other property of CARRIER.

The escrow fund may at any time be applied by CARRIER to satisfy any claims or debts owed by INDEPENDENT CONTRACTOR pursuant to the terms of this Agreement, including but not limited to advances made to INDEPENDENT CONTRACTOR or its workers, cargo claims, property damage or trailer damage claims, insurance costs, and the cash value of permits not returned to CARRIER. CARRIER shall provide an accounting to INDEPENDENT CONTRACTOR of any transaction involving the escrow fund, which accounting shall be shown on the settlement sheet produced at the time the transaction is made. INDEPENDENT CONTRACTOR may at any time request and receive an accounting for transactions involving the escrow fund. CARRIER shall pay interest on the escrow funds on a quarterly basis, which shall be established on the date the interest period begins and shall be equal to the average yield of 91 day, 13 week treasury bills, as established in the then most recent weekly auction by the Department of Treasury. For Canadian resident contractors only, the interest shall be at a rate equal to the average annual yield of 90 day treasury bills sold on the first date prior to such payment date on which the Canadian Federal Minister of Finance accepts tender for the purpose of 90 day treasury bills. For purposes of calculating the amount of the escrow fund on which interest will be paid, CARRIER will deduct a sum equal to the average advance made to INDEPENDENT CONTRACTOR during the period of time for which the interest is due.

6. **IDENTIFICATION DEVICES:** All identification devices of CARRIER required by any law or regulation shall be secured in the name of CARRIER and shall be displayed on the Equipment, at INDEPENDENT CONTRACTOR's expense, in accordance with all applicable regulations during the term of this Agreement. All identification devices and documents are the sole property of CARRIER. Any such identification shall be removed from the Equipment by INDEPENDENT CONTRACTOR and returned to CARRIER by first class mail addressed to CARRIER's address or in person immediately upon termination of this Agreement. The parties agree that, in addition to any other right, remedy or claim CARRIER may have, INDEPENDENT CONTRACTOR shall pay CARRIER Twenty-Five Dollars ($25.00) per day for INDEPENDENT CONTRACTOR's failure to remove and/or return all identification devices to CARRIER upon termination of this Agreement.

7. **OPERATIONAL EXPENSES:** Except as otherwise provided in this Agreement, INDEPENDENT CONTRACTOR shall furnish, provide and pay all operational expenses including, but not limited to, the items listed in this paragraph. In the event CARRIER is called upon to pay any of these operational expenses on behalf of INDEPENDENT CONTRACTOR, such payment shall be considered a Pre-Trip Settlement to INDEPENDENT CONTRACTOR (and a cost of operation) and CARRIER shall be entitled to seek reimbursement from INDEPENDENT CONTRACTOR or to charge back the payment as set forth in paragraph 4(b). Operational expenses include, but are not limited to, the following:

(a) All fuel, oil, tires and all equipment, accessories, or devices used in connection with the operation of the Equipment.

(b) All maintenance costs including all repairs,

(c) All taxes and assessments, insurance costs and other payments due by reason of the payment by INDEPENDENT CONTRACTOR of wages or other earnings to its workers;

(d) Base plates, including apportioned or prorated base plates, fuel permits and all other permits required to operate the Equipment (except overdimension/overweight permits), empty miles, detention, accessorial charges, licenses, and all tax payments with respect to the Equipment or on the use or operation thereof, including all reports required of INDEPENDENT CONTRACTOR connected therewith, and all ferry, bridge and highway tolls;

(e) Fuel and Fuel Use Taxes, and Ton Mile/Mileage Taxes;

(f) All fines and penalties resulting from acts or omissions of INDEPENDENT CONTRACTOR, including any monies paid by CARRIER in the form of penalties to a government or regulatory body because of some act or omission on the part of INDEPENDENT CONTRACTOR or its workers;

(g) All insurance costs relating to insurance coverage required by this Agreement or otherwise requested by INDEPENDENT CONTRACTOR from CARRIER;

(h) Federal Highway Use Tax on the Equipment; federal, provincial, state and city income taxes; and, any self-employment or payroll taxes;

(i) All sales, use, excise and other taxes due to ownership or operation of Equipment in the jurisdiction imposing such taxes, including federal goods and services tax and all applicable provincial taxes;

(j) All other expenses incurred in the operation of the Equipment, including, but not limited to, empty mileage, expenses incurred to transfer any shipment and/or secure additional equipment to complete delivery in case of breakdown or delay;

(k) In the event that the duration of this Agreement is less than six (6) months, INDEPENDENT CONTRACTOR shall be responsible for the costs related to all prequalification drug and alcohol tests required by applicable law.

8. **LOADING AND UNLOADING:** INDEPENDENT CONTRACTOR shall be responsible for the loading and unloading of all shipments transported under this Agreement at INDEPENDENT CONTRACTOR's expense, unless otherwise specified in Paragraph 4 or Appendix A of this Agreement.

9. **OVERWEIGHT/OVERDIMENSION SHIPMENTS:** CARRIER shall provide all required overweight/overdimension permits to INDEPENDENT CONTRACTOR; provided, however, that INDEPENDENT CONTRACTOR shall have the duty to determine that its load is in compliance with the size and weight laws of the jurisdictions in which it will travel and to notify CARRIER if the vehicle is overweight or in need of permits before commencing transportation. Except when a violation results from the acts or omissions of INDEPENDENT CONTRACTOR, CARRIER shall assume the risks and costs of fines for overweight and oversize trailers when the trailers are preloaded, sealed or the load is containerized, or when the trailer or lading is otherwise outside INDEPENDENT CONTRACTOR's control, or for improperly permitted overdimension and overweight loads, and CARRIER shall reimburse INDEPENDENT CONTRACTOR for any fines therefor paid by INDEPENDENT CONTRACTOR. INDEPENDENT CONTRACTOR shall reimburse CARRIER for any costs or penalties paid by CARRIER due to INDEPENDENT CONTRACTOR's failure to comply with the terms of any permit or INDEPENDENT CONTRACTOR's failure to pick up permits made available by CARRIER.

10. **LICENSE PLATES:** Unless INDEPENDENT CONTRACTOR already has obtained a valid base plate under the International Registration Plan ("IRP") or, for Canadian resident contractors, the Canadian Agreement on Vehicle Registration ("CAVR"), CARRIER shall obtain such plate in CARRIER's name for use by INDEPENDENT CONTRACTOR, in which case the amount specified in Appendix A per tractor per year (or a pro rata based amount for a partial year plate) shall be deducted from INDEPENDENT CONTRACTOR's compensation within an eighteen (18) week period beginning with the fifth weekly settlement made pursuant to this Agreement. If CARRIER receives a refund or credit for an IRP or CAVR plate registered in the name of CARRIER, or if such base plate is authorized by INDEPENDENT CONTRACTOR to be resold by CARRIER to another contractor,

CARRIER shall refund to INDEPENDENT CONTRACTOR a pro rata share of the amount received by CARRIER less a transfer fee of $125.00 per plate. INDEPENDENT CONTRACTOR shall not be entitled to reimbursement for an unused portion of a base plate, however, unless CARRIER is able to reuse or resell the plate to another contractor.

11. **PERMITS:** CARRIER shall provide INDEPENDENT CONTRACTOR with all necessary permits, and shall charge INDEPENDENT CONTRACTOR the amount specified in Appendix A per tractor per year, which charge shall be deducted from INDEPENDENT CONTRACTOR's compensation within an eighteen (18) week period beginning with the fifth weekly settlement made pursuant to this Agreement. All permits certificates and licenses issued in CARRIER's name shall be returned to CARRIER upon termination of this Agreement. No refund shall be made to INDEPENDENT CONTRACTOR by CARRIER of the permit costs upon termination of this Agreement. INDEPENDENT CONTRACTOR shall be liable to CARRIER for any expense caused to CARRIER by INDEPENDENT CONTRACTOR's failure to return all permits required by this provision.

12. **FUEL USE AND MILEAGE TAXES:** INDEPENDENT CONTRACTOR shall be responsible for all Fuel Use and Mileage Taxes incurred due to the operation of the Equipment under this Agreement, provided, however, that CARRIER shall prepare and file all reports required under the International Fuel Tax Agreement or other applicable state or provincial law on behalf of INDEPENDENT CONTRACTOR pursuant to the procedures set forth in Appendix E.

13. **SELECTION OF INDEPENDENT CONTRACTOR'S SUPPLIERS:** INDEPENDENT CONTRACTOR is not required to purchase or rent any products, equipment or services from CARRIER as a condition of entering into this Agreement.

14. **INSURANCE:** The responsibilities and obligations between CARRIER and INDEPENDENT CONTRACTOR involving insurance shall be as specified in Appendix B. CARRIER shall have no insurance responsibilities or obligations pertaining to INDEPENDENT CONTRACTOR or the Equipment other than those expressly stated in this Agreement or mandated by law.

15. **LOSS OR DAMAGE CLAIMS:** INDEPENDENT CONTRACTOR shall be responsible to CARRIER for any loss, damage or delay claim incurred during the term of this Agreement as follows:

   (a) Personal Injury and Property Damage. Personal injury and/or property damage claims due, in whole or in part, to INDEPENDENT CONTRACTOR's or its workers' negligence, as determined by CARRIER, will be charged to INDEPENDENT CONTRACTOR up to One Thousand Dollars ($1,000.00) per claim, when such claims arise out of INDEPENDENT CONTRACTOR's or its workers' operation of the Equipment on a public highway or road. Personal injury and/or property damage claims due, in whole or in part, to INDEPENDENT CONTRACTOR's or its workers' negligence, as determined by CARRIER, will be charged to INDEPENDENT CONTRACTOR up to Two Thousand Dollars ($2,000.00) per claim, when such claims arise out of INDEPENDENT CONTRACTOR's or its workers' operation of the Equipment on private or governmental property other than a public highway or road.

   (b) Trailer Damage. If INDEPENDENT CONTRACTOR or its workers are permitted to use a trailer which is the property of, interchanged to, or furnished by CARRIER and the trailer is damaged or destroyed, INDEPENDENT CONTRACTOR shall be responsible for the damage or loss, provided, however, that CARRIER agrees to limit INDEPENDENT CONTRACTOR's liability for damage to such trailers furnished by CARRIER to One Thousand Dollars ($1,000.00) per incident. This liability limitation shall not apply, however, if the damage is caused, in whole or in part, by any willful or intentional act of INDEPENDENT CONTRACTOR or its workers, or if the driver of the Equipment was not qualified and/or approved by CARRIER at the time of the incident.

   (c) Cargo Damage. INDEPENDENT CONTRACTOR shall be responsible for any claim resulting from cargo shortages, cargo damage, or delays in transporting shipments due, in whole or in part, to the negligence of INDEPENDENT CONTRACTOR or its workers, as determined by CARRIER, provided, however, that CARRIER agrees to limit INDEPENDENT CONTRACTOR's liability for any cargo claim to One Thousand Dollars ($1,000.00) per shipment. This liability limitation shall not apply, however, if the damage is caused, in whole or in part, by any willful or intentional act of INDEPENDENT CONTRACTOR or its workers, or if the driver of the Equipment was not qualified and/or approved by CARRIER at the time of the incident.

   (d) Clean-Up Expenses. INDEPENDENT CONTRACTOR shall be responsible for all costs of cleaning up any accident or spill, including but not limited to diesel fuel spills, involving the Equipment or the services provided by INDEPENDENT CONTRACTOR under this Agreement, provided, however, that CARRIER agrees to limit INDEPENDENT CONTRACTOR's liability for each such incident to Two Thousand Dollars ($2,000.00). This liability limitation shall not apply, however, if the damage is caused, in whole or in part, by any willful or intentional act of INDEPENDENT CONTRACTOR or its workers, or if the driver of the Equipment was not qualified and/or approved by CARRIER at the time of the incident.

   (e) Miscellaneous. INDEPENDENT CONTRACTOR'S liability under subparagraphs (a), (b), (c) and (d) above shall not exceed Two Thousand Dollars ($2,000.00) for any single incident, provided, however, that this liability limitation shall not apply if the incident is caused in whole or in part, as determined by CARRIER, by any willful or intentional act of INDEPENDENT CONTRACTOR or its workers, or if the driver of the Equipment was not qualified and/or approved by CARRIER at the time of the incident.

16. **INDEPENDENT CONTRACTOR RELATIONSHIP:** This Agreement is intended by the parties to create the relationship of CARRIER and INDEPENDENT CONTRACTOR and not that of an employer/employee nor master/servant relationship. Neither INDEPENDENT CONTRACTOR, its workers, nor any individual providing services of any kind to INDEPENDENT CONTRACTOR, are to be considered employees of CARRIER at any time, under any circumstances or for any purpose. INDEPENDENT CONTRACTOR unconditionally waives and releases CARRIER, and any third-party employee benefit fund that provides benefits to any of CARRIER's current or former employees, from any claim for benefits based on any past services rendered to CARRIER under this Agreement. INDEPENDENT CONTRACTOR shall assume full and complete responsibility for all workers utilized by it in the performance of all obligations under this Agreement. In recognition of the independent contractor relationship which exists between the parties, it is acknowledged that INDEPENDENT CONTRACTOR has the right to determine the manner and means of performing all work hereunder. INDEPENDENT CONTRACTOR has the right to decide what work to perform under this Agreement, provided, however, that when work is accepted by INDEPENDENT CONTRACTOR the work will be performed in accordance with the terms of this Agreement, the requirements, if any, of CARRIER's customers, and all applicable laws and governmental regulations. In no event shall any contracts or statements of CARRIER be deemed, construed or implied to control, direct, or infringe on INDEPENDENT CONTRACTOR's right to control or actually control the manner and means of INDEPENDENT CONTRACTOR's performance of the services contemplated in this Agreement. INDEPENDENT CONTRACTOR further agrees to defend, indemnify and hold CARRIER harmless from any claims, demands, suits, or actions brought by any workers, any union, the public, or state, provincial or federal agencies, arising out of the operation of the Equipment or the provision of driver services pursuant to this Agreement.

17. **PASSENGERS:** No passenger shall be permitted to travel in the Equipment without prior written authorization from CARRIER. Any passenger authorized by CARRIER must be a minimum of 18 years of age, and must sign a waiver of liability as provided in the Passenger Authorization Form to be provided by CARRIER. In no event shall more than one authorized passenger be permitted at any one time.

18. **REFLECTIVE TAPE MARKINGS:** In order to ensure safe operations on the highways, INDEPENDENT CONTRACTOR agrees that all trailing equipment provided to CARRIER by INDEPENDENT CONTRACTOR shall be properly marked with reflective tape as specified by CARRIER or as may be required by applicable law.

19. **SUBCONTRACTING/TRIP-LEASING:** INDEPENDENT CONTRACTOR may trip-lease or subcontract the Equipment to a third party other than a subsidiary of CARRIER only upon receiving prior written authorization from CARRIER. The following procedures shall apply to any trip-lease or subcontract situation:

In order to request authorization from CARRIER for any trip-lease, INDEPENDENT CONTRACTOR shall:

1) Obtain valid carrier information (name, address, identification number, phone number, contact person of carrier);
2) Call CARRIER's main office and provide CARRIER with information about the carrier and about the load;
3) Receive and record release number, if trip lease is approved. In the event that a trip-lease is not approved, a release number will not be given and INDEPENDENT CONTRACTOR may not enter into a trip-lease agreement; and
4) Any payments in advance offered to INDEPENDENT CONTRACTOR by any other carrier must be refused.

Upon delivery of any trip-lease load, INDEPENDENT CONTRACTOR shall:

1) Obtain a signed proof of delivery;
2) Indicate release number on each piece of paperwork; and
3) Mail all paperwork, including a copy of the signed-off trip-lease agreement, placards, shipping order or bill of lading, delivery receipt and logs to the designated representative of CARRIER.

CARRIER assumes no responsibility for the collection of freight charges or payment to INDEPENDENT CONTRACTOR of any trip-lease related revenue unless this provision is complied with by INDEPENDENT CONTRACTOR. During the term of any trip-lease, INDEPENDENT CONTRACTOR shall remove or cover up all of CARRIER's identification on the Equipment, and CARRIER shall have no responsibility for, and INDEPENDENT CONTRACTOR shall fully indemnify CARRIER regarding, the operation of the Equipment in respect to the public, shippers, and governmental regulations during the term of such trip-lease.

20. **UNAUTHORIZED USE OF EQUIPMENT:** If, during the term of this Agreement, INDEPENDENT CONTRACTOR or its workers operate any Equipment in any manner varying from the regulations or beyond the scope of the operating authority of CARRIER, or uses the Equipment for its own purposes, or for benefit of a third party other than CARRIER (except as allowed in Paragraph 19) or for any other purpose not permitted by this Agreement, then this Agreement shall, at CARRIER's option, be deemed terminated as of the time that such unauthorized use occurred, and all obligations and liabilities of CARRIER under this Agreement shall be deemed to have ceased and terminated as of the time of such unauthorized use, except for any and all provisions regarding the indemnification of CARRIER by INDEPENDENT CONTRACTOR which provisions shall survive the termination of this Agreement. Nothing in this Agreement shall prohibit INDEPENDENT CONTRACTOR from rendering services as a driver to any third party. If INDEPENDENT CONTRACTOR renders services as a driver to another company, INDEPENDENT CONTRACTOR shall include such time on all driver logs submitted to CARRIER as required by federal, provincial or state law. Failure to comply with these requirements may result in the immediate termination of this Agreement by CARRIER.

21. **TRAILER UTILIZATION PROGRAM:** INDEPENDENT CONTRACTOR may utilize CARRIER's trailers under the Trailer Utilization program described in Appendix D.

22. **DUE DILIGENCE AND COOPERATION WITH CARRIER ON CLAIMS:**

(a) Cargo Claims. INDEPENDENT CONTRACTOR warrants that all cargo loaded on the Equipment shall be delivered to the consignee with reasonable diligence, speed and care and as may be required by the shipper or on the bill of lading. INDEPENDENT CONTRACTOR or its driver shall immediately report any cargo exceptions or damages to CARRIER.

(b) Accidents. INDEPENDENT CONTRACTOR or its driver shall notify CARRIER immediately of any property damage and any incident or accident involving any pedestrian or occupant of any type of vehicle, whether or not the incident or accident appears to have resulted in personal injury and whether or not INDEPENDENT CONTRACTOR appears to be at fault.

(c) Roadside Inspections. INDEPENDENT CONTRACTOR or its driver shall notify CARRIER in a timely fashion of any roadside inspection of the Equipment and the results thereof, and INDEPENDENT CONTRACTOR shall provide CARRIER with a copy of the roadside inspection report received in connection with each such inspection.

(d) Notice of Infractions, Claims or Suits. INDEPENDENT CONTRACTOR shall forward immediately to CARRIER every demand, notice, summons, ticket or other legal process received by INDEPENDENT CONTRACTOR that involves a charge, infraction, claim, suit or other legal proceeding arising from the operation of the Equipment, the relationship created by this Agreement or the services performed hereunder.

(e) Independent Contractor's Assistance and Cooperation. INDEPENDENT CONTRACTOR and its driver shall cooperate fully with CARRIER in the conduct of any legal action, regulatory hearing or other similar process arising from the operation of the Equipment, the relationship created by this Agreement or the services performed hereunder. INDEPENDENT CONTRACTOR shall, upon CARRIER's request, provide written reports or affidavits, attend hearings and trials and assist in securing evidence or obtaining the attendance of witnesses. INDEPENDENT CONTRACTOR shall provide CARRIER with any assistance as may be necessary for CARRIER or CARRIER's representatives or insurers to investigate, settle or litigate any accident, claim or potential claim by or against CARRIER.

23. **C.O.D. SHIPMENTS:** In handling C.O.D. or order/notify shipments, INDEPENDENT CONTRACTOR or its workers shall perform as indicated on the shipping order; call the originating terminal to report the C.O.D. or order/notify shipment; accept only a certified check, cashier's check or United States or Canadian Postal money order made payable to CARRIER for the shipment; and, remit to CARRIER no later than the next business day after the delivery date the full amount specified on the freight bill, including transportation and C.O.D. charges. In the event that INDEPENDENT CONTRACTOR accepts any other method of payment, INDEPENDENT CONTRACTOR shall bear the risk of loss. In the event of non-delivery of such a shipment, INDEPENDENT CONTRACTOR or its workers shall advise CARRIER of such non-delivery no later than the next business day following the day of attempted delivery or collection.

24. **EQUAL EMPLOYMENT OPPORTUNITY:** The services and Equipment specified herein will be furnished by INDEPENDENT CONTRACTOR in full compliance with all applicable federal, provincial, state and local laws and regulations pertaining to government contracts and subcontracts, including, without limitation, Executive Order 11246.

25. **GOVERNING LAW AND ARBITRATION:** This Agreement is to be governed by the laws of the State of Illinois. Any dispute arising out of or relating to this Agreement including any allegation of breach thereof, shall be fully and finally resolved by arbitration in accordance with Illinois's arbitration act, and the arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). A Demand for Arbitration shall be filed with the AAA's office located in or closest to Rockford, IL, and shall be filed not later than one year after the dispute arises or the claim accrues. Failure to file the Demand within the one year period shall be deemed a full waiver of the claim. The place of the arbitration hearing shall be Rockford, IL. Both parties agree to be fully and finally bound by the arbitration award, and, where allowed by law, judgment may be entered on the award in any court having jurisdiction thereof. All dollar amounts specified in this Agreement are based on U.S. Dollars.

26. **ENTIRE AGREEMENT:** This Agreement contains the entire agreement between CARRIER and INDEPENDENT CONTRACTOR and supersedes, cancels and revokes all other contracts between the parties relating to the Equipment and any other contract which is alleged to cover any services rendered by INDEPENDENT CONTRACTOR to CARRIER, or to which INDEPENDENT CONTRACTOR is alleged to be a third-party beneficiary as a result of any services rendered to CARRIER, provided, however, that the parties may amend or modify this Agreement in writing signed by both parties or, with respect to modification of any chargeback item, as allowed for in Appendix A of this Agreement.

27. **SEVERABILITY AND SAVINGS:** If any sections, part or parts of sections of this Agreement are deemed invalid for any reason whatsoever, the provisions of this Agreement shall be void only as to such section, sections or part, or parts of sections, and this Agreement shall remain otherwise binding between the parties hereto. Any section, or part or parts of sections voided by operation of the foregoing shall be replaced with provisions which shall be as close as the parties' original intent as permitted under applicable law.

28. **NON-WAIVER:** The failure or refusal of either party to insist upon the strict performance of any provision of this Agreement, or to exercise any right in any one or more instances or circumstances shall not be construed as a waiver or relinquishment of such provision or right, nor shall such failure or refusal be deemed a custom or practice contrary to such provision or right.

29. **NOTICES:** Any notice required or permitted by this Agreement shall be deemed conclusively to have been given when deposited in the United States or Canada Mail properly addressed with first class postage prepaid. The address of each party shall be that set forth on the Attached Statement, and the address to which notices are to be sent may be changed by providing the other party notice of change of address. Where INDEPENDENT CONTRACTOR provides notice of change of its address, the change of address will be effective upon CARRIER's sending acknowledgment of the notice.

30. **TERMINATION:** The INDEPENDENT CONTRACTOR will, at the time this Agreement is terminated, remove all CARRIER identification from the Equipment and return all of CARRIER's property and freight to CARRIER's nearest terminal, including trailers, chains, binders, and tarps and placards. Plates and permits must be returned to the Permit Department in Rockford, IL. If INDEPENDENT CONTRACTOR fails to return CARRIER's property or freight to CARRIER or remove all CARRIER identification from the equipment to CARRIER within fifteen (15) days after termination of this Contract, INDEPENDENT CONTRACTOR will pay CARRIER an initial payment of damage in the amount of $1,000.00, as a pre-estimate of damages and not as a penalty, and CARRIER may pursue all other remedies allowed by law or authorized in the Agreement against INDEPENDENT CONTRACTOR. If INDEPENDENT CONTRACTOR fails to perform its obligations under this Agreement, CARRIER may, in addition to any other remedy provided by law or under this Agreement, complete INDEPENDENT CONTRACTOR's obligations and charge INDEPENDENT CONTRACTOR for any expenses associated with completing INDEPENDENT CONTRACTOR's obligations.

Les parties ont specifiquement requis que la presente convention de meme que tous les documents s'y rattachant soitent redigees en langue anglais seulement.

The parties have specifically requested that this Agreement and all documents hereto be drafted in the English language only.

IN WITNESS WHEREOF, CARRIER and INDEPENDENT CONTRACTOR do hereby sign this Agreement on this ______ day of ____________________, ________, the effective date of this Agreement.

LANDSTAR INWAY, INC.
CARRIER

INDEPENDENT CONTRACTOR

Signature

Signature

**IMPORTANT: CARBONLESS PAPER**

Distribution: Original (white) - Inway Copy (yellow) - Contractor

SCAC CODE: LDWY
UNIT: 405770
Requester: DSTAMB

07/09/2001 MON 10:02 FAX 002

LANDSTAR INWAY

LANDSTAR INWAY, INC.
P.O. BOX 7013
Rockford, Illinois 61125-7013

**MOTOR VEHICLE AND HAULAGE AGREEMENT BETWEEN INDEPENDENT CONTRACTOR AND LANDSTAR INWAY, INC. ("Agreement")**

1. EQUIPMENT: INDEPENDENT CONTRACTOR represents and warrants to CARRIER that it holds full legal title to or is otherwise authorized to contract the equipment identified in Section IV of the Statement of Lease and Receipt for Equipment (the "Equipment"), and further warrants and represents that the Equipment is in good, safe and efficient operating condition as required by government authorities and shall be so maintained at INDEPENDENT CONTRACTOR's expense throughout the duration of this Agreement. The choice of location and persons to perform any necessary repairs or maintenance is exclusively vested with INDEPENDENT CONTRACTOR. ALL POWER EQUIPMENT WHICH IS THE SUBJECT OF THIS AGREEMENT IS TO BE OPERATED BY FULLY QUALIFIED AND LICENSED OPERATORS TO BE PROVIDED BY INDEPENDENT CONTRACTOR AT ITS EXPENSE.

(a) Receipt for Equipment. Upon INDEPENDENT CONTRACTOR making available to CARRIER the Equipment, CARRIER shall furnish to INDEPENDENT CONTRACTOR the Statement of Lease and Receipt for Equipment, which shall constitute the receipt required by 49 C.F.R. 376.11(b). Upon termination of the Agreement, INDEPENDENT CONTRACTOR shall execute the same or similar Statement of Lease and Receipt for Equipment as the written receipt for the return of the Equipment by CARRIER to INDEPENDENT CONTRACTOR. In the event that INDEPENDENT CONTRACTOR fails to submit the Statement of Lease and Receipt for Equipment upon termination of this Agreement, INDEPENDENT CONTRACTOR authorizes CARRIER to enter the time and date in Section VI of the Statement of Lease and Receipt for Equipment to evidence the return of the Equipment to INDEPENDENT CONTRACTOR by CARRIER. If required by applicable federal, provincial or state law, INDEPENDENT CONTRACTOR shall name CARRIER on either the vehicle or plate portion of the vehicle permit, or include CARRIER on a statement of a lease between INDEPENDENT CONTRACTOR and a third party. However, under no circumstances shall CARRIER be, or be deemed to be, liable for any lease payments whatsoever due or owed from INDEPENDENT CONTRACTOR to any third party. In the event that CARRIER is found to be liable for such lease payments, INDEPENDENT CONTRACTOR shall fully indemnify CARRIER for any and all costs or damages imposed.

(b) Operation of Equipment. INDEPENDENT CONTRACTOR agrees to operate the Equipment in a safe and prudent manner at all times in accordance with the laws of the various jurisdictions in which it is operated and pursuant to the operating authorities of the CARRIER, and in accordance with all rules relating to traffic safety, highway protection and road requirements.

(c) Inspection and Maintenance of Equipment. INDEPENDENT CONTRACTOR agrees to maintain the Equipment, at its sole expense, in accordance with the safety and equipment standards specified in all applicable federal, provincial and state laws under which the Equipment is licensed to operate. INDEPENDENT CONTRACTOR shall, at its expense, make the Equipment available for inspection by CARRIER at a place designated by CARRIER. Thereafter, as required by applicable federal law, INDEPENDENT CONTRACTOR shall make the Equipment available for inspection by CARRIER at least once every 120 days. Providing that such inspection is done every 120 days and at a place designated by CARRIER, then CARRIER will pay for the expense of inspection. If the Equipment is not inspected every 120 days, the Equipment will be placed out-of-service by CARRIER until the required inspection is completed, in which case the inspection shall be at INDEPENDENT CONTRACTOR's sole expense. If any inspection reveals that the Equipment does not comply with applicable standards of federal, provincial or state law, the Equipment must be made to comply with such requirements by INDEPENDENT CONTRACTOR, at its expense, within a reasonable time as determined by CARRIER. INDEPENDENT CONTRACTOR shall, at its sole expense, keep records of inspection, repair, and maintenance of the Equipment in accordance with the Federal Motor Carrier Safety Regulations (49 C.F.R. Part 396) and, if operated in Canada, applicable provincial regulations, and shall maintain all such records for the duration of this Agreement and for six (6) months thereafter. INDEPENDENT CONTRACTOR shall, as directed by CARRIER, forward to CARRIER all maintenance records covering the Equipment required by applicable DOT or Canadian federal or provincial regulations.

(d) Painting or Marking of Equipment. If required by applicable federal, provincial or state law, INDEPENDENT CONTRACTOR shall cause the name, style, mark or logo of CARRIER to be affixed to the Equipment on the direction and in the manner prescribed by CARRIER. INDEPENDENT CONTRACTOR shall be responsible for the cost of affixing such name, style, mark or logo and for the removal of same at the termination of this Agreement.

2. DURATION OF AGREEMENT: This Agreement shall be effective as of the date entered hereinbelow and shall remain in effect until terminated in accordance with the provisions of this Agreement. The breach by either party of any of the provisions of this Agreement shall immediately terminate all provisions of this Agreement, except those provisions relating to indemnification of CARRIER by INDEPENDENT CONTRACTOR as contained in this Agreement, which indemnification provisions shall be effective at all times. Either party, by giving the other party twenty-four (24) hours written notice, may terminate this Agreement at any time. CARRIER may also terminate the Agreement immediately by oral notice followed by written notice to INDEPENDENT CONTRACTOR. Acceptance of tender of load after the effective date of this Agreement shall indicate understanding and acceptance by INDEPENDENT CONTRACTOR of the terms and conditions of this Agreement. INDEPENDENT CONTRACTOR shall ensure that any worker employed or utilized by INDEPENDENT CONTRACTOR to provide services under this Agreement complies with the terms and conditions of this Agreement. Although this Agreement does not contain a stated date of termination, the parties agree that they are not creating a permanent or indefinite relationship.

3. EXCLUSIVE POSSESSION AND RESPONSIBILITY: The Equipment shall be for CARRIER's exclusive possession, control and use for the duration of this Agreement. This provision is set forth solely to conform with Federal Highway Administration regulations and shall not be used for any other purposes, including any attempt to classify INDEPENDENT CONTRACTOR or its workers as employees of CARRIER. Nothing in the provisions required by 49 C.F.R. 376.12(c)(1) is intended as evidence that the INDEPENDENT CONTRACTOR or any worker provided by INDEPENDENT CONTRACTOR is an employee of CARRIER. During the term of this Agreement, CARRIER shall have the exclusive right to subcontract the Equipment to other authorized motor carriers. INDEPENDENT CONTRACTOR may only subcontract or trip lease the Equipment upon prior written authorization received from CARRIER as set forth in Paragraph 19. CARRIER has no right to and will not control the manner nor prescribe the method of doing that portion of the operation which is contracted for in this Agreement by INDEPENDENT CONTRACTOR, except such control as can reasonably be construed to be required by all applicable laws and regulations. INDEPENDENT CONTRACTOR reserves the right to accept or reject any freight tendered for transportation by CARRIER.

09-Jul-01 11:05A

SCAC CODE: LDWY
UNIT: 405770
Requester: DSTAMB

07/06/2001 FRI 14:07 FAX

07/03/2001  09:38  8864345929                      COVINGTO                    PAGE  10

*[Body text too faded to read reliably — numbered contract paragraphs 20 through 30]*

IMPORTANT: CARBONLESS PAPER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RICHARD CROSBY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-CV-1535 |
| | ) | |
| v. | ) | |
| | ) | |
| LANDSTAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I, JAMES E. DRNEC, hereby certify that on this 12th day of May 2005, I have caused two (2) copies of DEFENDANT LANDSTAR'S MOTION TO DISMISS FOR LACK OF JURISDICTION and DEFENDANT LANDSTAR'S BRIEF IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION to be served in the manner indicated upon the following counsel of record:

VIA FIRST CLASS MAIL
Richard Crosby
1502 S. DuPont Highway
New Castle, DE 19720
*Pro Se*

James E. Drnec (#3789)

JED/019835-0006/1072580/1